**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MOUNTAIN COUNTRY FOOD STORE, INC.; Roswil, Inc. d/b/a Ramey Supermarkets, Respondents.**

No. 90–1385.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1990.

Decided April 23, 1991.

Request For Alteration of Opinion Denied June 3, 1991.

Aileen A. Armstrong, Washington, D.C., for appellant.

Donald W. Jones, Springfield, Mo., for appellee.

Before ARNOLD and FAGG, Circuit Judges, and McMILLAN,* Senior District Judge.

FAGG, Circuit Judge.

The National Labor Relations Board (NLRB) petitions for enforcement of its order against Mountain Country Food Store, Inc. and Roswil, Inc. (the stores). We deny enforcement.

The parties do not dispute the controlling facts. In 1981, Teamsters Local Union No. 245 (the union) was the certified bargaining representative for the employees of Aurora Coca–Cola Bottling Company (Aurora Coke) located in Aurora, Missouri. In September 1981, the union began an economic strike against Aurora Coke. In support of its strike, the union engaged in peaceful consumer handbilling at retail outlets selling Aurora Coke's products, including the stores in this case. In keeping with the stores' policies against on-premise solicitation or handbilling, the stores refused to allow the union to handbill on their sidewalks and parking lots. The union then attempted to handbill on public property near the entrances to the stores' properties. This proved unsatisfactory because of automobile traffic, and the union ended its handbilling activities.

The union filed an unfair labor practices charge, contending the stores interfered with the union's right to engage in lawful strike activities in violation of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) (1988). The stores defended their actions asserting their private property interests outweighed the union's right to engage in consumer handbilling. The administrative law judge (ALJ) applied the then-existing facts and circumstances to balance the parties' competing interests and issued his decision in favor of the union on November 5, 1982. Over six years later, on February 10, 1989, the NLRB affirmed the ALJ's findings and conclusions. Not surprisingly, during this time lapse significant changes occurred in the underlying facts and circumstances relied on by the ALJ.

Assuming the ALJ properly balanced the stores' private property rights against the union's protected interest in handbilling,

see *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112–14, 76 S.Ct. 679, 684–85, 100 L.Ed. 975 (1956), we nonetheless refuse to enforce the NLRB's order. Simply stated, the long-delayed NLRB order no longer addresses a meaningful controversy. The events in question occurred in 1981 and had long been forgotten until the NLRB resurrected the case over seven years later. In the interim, the union was decertified, one of the stores relocated, and the identity and number of Aurora Coke's employees likely changed. In short, the circumstances relied on by the ALJ to balance the parties' competing interests no longer exist. We believe "the passage of time between [the stores'] action[s] and the [B]oard's remedy has so changed the underlying situation ... that enforcement of the order now ... would mock reality." *Emhart Indus., Hartford Div. v. NLRB*, 907 F.2d 372, 379–80 (2d Cir.1990). Thus, in the unlikely event another handbilling dispute should arise, the parties' rights must be balanced anew based on contemporary—not historical—circumstances.

The stores argue "the entire basis for the [NLRB's] order ... has evaporated," and it would be extremely unfair to enforce the order under the given circumstances. We agree. Any adverse effects caused by the stores' unfair labor practices have long since dissipated, and it is unclear what protection or benefit Aurora Coke's employees would receive by enforcing the NLRB's order now. *Texas Petrochemicals Corp. v. NLRB,* 923 F.2d 398, 404 (5th Cir.1991). Indeed, enforcing the NLRB's order in this case would be nothing short of punitive and certainly not remedial. There is no reason to believe the stores will resume the unfair labor practice cited by the NLRB. *See NLRB v. Greensboro News & Record, Inc.*, 843 F.2d 795, 798 (4th Cir.1988) (enforcement inappropriate when "there is no reasonable expectation that the wrong will be repeated in the future"). Furthermore, the NLRB's order—couched in terms requiring that the stores not prevent the union's representatives from handbilling about the union's dispute with Aurora Coke—is incapable of meaningful compliance or effective enforcement. The union no longer exists, no longer represents Aurora Coke's employees, and no longer carries any legal interest in the long-past handbilling dis-

---

* The HONORABLE JAMES B. McMILLAN, Senior United States District Judge for the Western

District of North Carolina, sitting by designation.

pute. In addition, the NLRB order certainly does not preclude the stores from protecting their property rights against unrelated handbilling activities in the future.

Responsibility for the extraordinary delay in this case, and the significant change in circumstances, falls squarely on the NLRB's shoulders. During oral argument the court expressed concern about the delay, but the NLRB could offer no explanation for its sloth-like pace in issuing its order.

> Judge Arnold [addressing counsel for the NLRB]: [O]ne thing about this really concerns me ... the ALJ's opinion [was] filed in 1982, [but] the Board d[id]n't decide the case until 1989. Can you tell us why?
>
> Counsel for the NLRB: I must confess, Your Honor, that I'm embarrassed by that myself.... [A] deputy counsel of the Board ... had a mental block in deciding [this] case.... I have no explanation for it and, frankly, I must confess it's inexcusable and unfortunate....
>
> Judge Arnold: We agree with you.

If we were to ignore the effects of the NLRB's "inexcusable and unfortunate" delay in this case, we would be abandoning our supervisory responsibility to ensure "'the reasonableness and fairness of Labor Board decisions.'" *Emhart*, 907 F.2d at 379 (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 490, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). This we will not do. Other circuit courts of appeals have been quick to recognize their responsibility to deny enforcement of NLRB orders rendered pointless and obsolete by virtue of the NLRB's self-inflicted administrative delay. *See, e.g., Texas Petrochemicals*, 923 F.2d at 404 (four-year delay); *Emhart*, 907 F.2d at 379 (six-year delay); *Greensboro*, 843 F.2d at 798–99 (three-year delay); *Continental Web Press, Inc. v. NLRB*, 742 F.2d 1087, 1095 (7th Cir.1984) (two-year delay). Likewise, this court will not flinch at discharging its duty to ensure fairness.

Accordingly, enforcement is denied.

McMILLAN, Senior District Judge, dissenting:

I respectfully dissent.

Difficulty of enforcement and justified vexation at the NLRB should not prevent this court from trying to do right.

A ruling on the merits is of course long deferred, and relief is hard to provide. Nevertheless, the NLRB—and the court—have a responsibility to *all* the parties. The NLRB has, at last, met its responsibility. The court can legitimately condemn the NLRB's *delay* without wiping out or postponing the *remedy* that they have, at long last, directed.

There is no apparent reason to expect that a case-laden administrative agency will clean up its act if we deny enforcement of the order they have now produced.

I would join in censuring the NLRB's delay as roundly as this court chooses; *but I would not refuse to decide the rights of the parties simply because the NLRB has been slow to act.*

We should decide this case on its merits and leave the further policing or censure, if any, of the NLRB to another day.

### Order

### June 3, 1991

Before ARNOLD and FAGG, Circuit Judges, and McMILLAN,** Senior District Judge.

The National Labor Relations Board (NLRB) has asked the court to change its opinion in this case, 931 F.2d 21, by deleting a passage containing dialogue between the court and counsel for the NLRB. *Id.* at 23.

The NLRB's request is surprising to say the least. The NLRB pointedly informs the court that "[b]y publicly memorializing [counsel's remarks] the [court] has exposed [counsel] to censure and ... [the NLRB does] not believe [the court] anticipated or desired this result." The court resents the suggestion that unless the court capitulates to the NLRB's request, counsel's career is in jeopardy. The court believes counsel should be commended, not criticized, for answering frankly the question

---

** The HONORABLE JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.

put to him by a judge of this court. This is one of the duties of counsel as an officer of the court.

The court has no good reason to think that counsel was acting other than in entire good faith. His statement, therefore, contrary to the NLRB's view, was not "a serious breach of his responsibility as counsel for the Board." Indeed, counsel gave a superior oral argument to this court while zealously representing the NLRB. As the NLRB itself acknowledges, counsel "has over twenty years of experience with the government, and ... has a reputation for excellence in appellate advocacy." Counsel deserves greater respect than he has received from the NLRB in this case. Rather than seeking a scapegoat to carry blame, the NLRB should examine its internal operations and find a solution for its delayed decision-making.

Accordingly, the NLRB's request for an alteration of the court's opinion is denied, and the NLRB is specifically cautioned not to penalize counsel for his honesty. If counsel is censured or disadvantaged in any way for his candor, the court reserves the right to take further appropriate action against those responsible.

It is so ordered.